Business Affairs Consultants Inc. ALC
Christopher P. Epsha (SBN 202089)
1800 Century Park East Suite 600
Los Angeles, California 90067
Tel:   310-229-5921
Fax:  888-779-6561

Attorney for Plaintiff
ROBERT L. MILLER

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L. MILLER<br><br>            Plaintiffs,<br><br>       v.<br><br>JP MORGAN CHASE BANK N.A.,<br>DEUTSCHE BANK NATIONAL TRUST<br>COMPANY, as Trustee for LONG BEACH<br>MORTGAGE LOAN TRUST 2006-6,<br>ASSET-BACKED CERTIFICATES, SERIES<br>2006-6; SELECT PORTFOLIO SERVICING<br>INC. AND DOES 1-100,<br><br>            Defendant(s). | Case No.: CV 13-03192 EJD<br><br>**PLAINTIFFS' OPPOSITION TO<br>DEFENDANTS' MOTION TO DISMISS<br>PLAINTIFFS' VERIFIED COMPLAINT;<br>SUPPORTING MEMORANDUM OF<br>POINTS AND AUTHORITIES**<br><br>**Date:    January 17, 2014**<br>**Time:   9:00 am**<br>**Place:  Courtroom 4, 5th Floor**<br>**Judge:  Hon. Edward J. Davila**<br><br>**Complaint Filed:   July 10, 2013**<br>**Trial Date:          None Set** |

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES..............................................................1

INTRODUCTION ...........................................................................................................................1

I. STATEMENT OF MATERIAL FACTS...............................................................................1

II. STANDARD OF REVIEW FOR MOTION TO DISMISS ..................................................7

III. ARGUMENT ...........................................................................................................................8

A.  Plaintiffs' Plaintiffs' Claims vs. SPS…………………………………………………8

B. "Defective" Legal Theory Defense…………………………………………………...8

C.  Plaintiff's Declaratory Relief Claim is Sufficiently Pleaded as a Matter of Law……….13

D.  Plaintiffs' Negligence Claim is Sufficiently Pleaded as a Matter of Law………………16

E.  Plaintiffs' Quiet Title Claim is Sufficiently Pleaded as a Matter of Law……………….17

F. Plaintiff's 15 U.S.C. § 1692 Claim is Sufficiently Pleaded as a Matter of Law………… 18

G.  Plaintiffs' Claim for Violation of Business and Professions Code Section
17200 *et seq.* Is Sufficiently Pleaded as a Matter of Law………………………………..19

H. Plaintiff's Section 2934a Claim Is Sufficiently Pleaded As a Matter of Law…………...19

I. Plaintiff's Civil Code § 2924.17 Claim Is Sufficiently Pleaded As a Matter of Law……..21

J.  Plaintiffs' Fraud Claim is Sufficiently Pleaded as a Matter of Law………………………23

K.  Plaintiffs' Cancellation of Instruments Claim is Sufficiently
Pleaded as a Matter of Law...........................................................................................23

L.  Plaintiffs' Quasi Contract Claim is Sufficiently Pleaded as a Matter of Law…………….24

M. Plaintiff's Accounting Claim Should Not Be Dismissed…………….....……………….25

CONCLUSION…..............................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**UNITED STATES SUPREME COURT**

4

*Bell Atlantic  Corp. v. Twombly,* 55 US 544 (2007)……………………………………………..8

5

*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)………………………………………………………7

6

*Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 811 (1993)……………………….…7

7

*Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)……………………...14

8

*Scheuer  v. Rhodes,*  416 U.S. 232, 236 (1974)………………………………………….……7

9

**FEDERAL CASES**

10

*American States Ins. Co. v. Kearns,* 15 F.3d 142, 143 (9th Cir. 1994)……………………….13

11

*Avila v. Wells Fargo Bank,* No. 12-01237, 2012 WL 2953117,*15 (N.D.Cal. July 19, 2012)…….15

12

*Barbieri v. Pwfg,* 2013 U.S. Dist. LEXIS 429 at *6 (N.D. Cal. Jan. 2, 2013)……………………..15

13

*Barrioneuvo v. Chase Bank, N.A.,* No. C-12-0572 EMC, Docket No. 23

14

(N.D. Cal. Aug. 6, 2012), 2012 WL 3235953 *8………………………………………… 15,24

15

*Casas v. Wells Fargo  Bank N.A.,,* 2012 WL 5877641………………………………………….19

16

*Cervantes v. City of San Diego,* 5 F.3d 1273, 1274 (9th Cir. 1993)……………………………...7

17

*Clemens v. J.P. Morgan Chase Nat. Corporate Services, Inc*.,

18

No. C-09-3365 EMC, 2009 WL 4507742 at *7 (N.D. Cal. Dec. 1, 2009)………………………...19

19

*Corazon v. Aurora Loan Services, LLC,* No. 11-00542, 2011 WL 1740099, *5

20

(N.D. Cal. May 5, 2011)…………………………………………………………………………...8

21

*Doe v. United States,* 419 F.  3d 1058, 1062 (9th Cir. 2005)……………………………………7

22

*Enesco Corp. v. Price/Costco, Inc.,* 146 F. 3d 1083, 1085 (9th Cir. 1998)………………………7

23

*Frazier v. Aegis Wholesale Corp.,* 2011 WL 603391 (E.D. Cal. Dec. 16, 2011)…………….......15

24

*Giannini v. American Home Mortg. Servicing, Inc.*, No. 11-04489 TEH,

25

2012 WL 298254, at *3 (N.D.Cal. Feb.1, 2012)…………………………………………………15

26

*Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997)…………………………………7

27

*Gray v. City of West Sacramento,* No. CIV S-08-0433 MCE DAD PS (E.D. Cal. 2008)…………20

28

*Gutierrez v. Wells FargoBank*, No. 08–5586, 2009 WL 322915, *3

1   (N.D. Cal. 2009)……………………………………………………………………18

2   *In Re Jogert, Inc.*, 950 F. 2d 1498 (9th Cir. 1991)…………………………………………………22

3   *In re Sagent Tech., Inc.*, 278 F.Supp.2d 1079, 1094 (N.D. Cal. 2003)……………………………...8

4   *In re Wells,* 407 B.R. 873, 883 (Bkrtcy. N.D.Ohio 2009)………………………………………10,20

5   *Johnson v. HSBC et al.*,

6   (U.S. District Court, S.D. California Case No. 3:11-cv-2091-JM-WVG)……………………11,21,25

7   *Kelley v. Mortgage Electronic Registration Sys., Inc.*, 642 F.Supp.2d 1048, 1057

8   (N.D. Cal. 2009)……………………………………………………………………………18

9   *Lane v. Vitek Real Estate Industries Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010)………12

10  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001)………………………………20

11  *Lomely v. JP Mortgage Chase Bank, N.A.*, No. 2-01194, 2012 WL 4123403, *3

12  (N.D. Cal. Sept. 17, 2012)…………………………………………………………………12

13  *Macris v. Bank of America, N.A.*, No. 11-1986, 2012 WL 273120, *7

14  (E.D. Cal. Jan. 30, 2012)……………………………………………………………………13

15  *Naranjo v. SBMC Mortgage, JP Morgan, US Bank et al.*

16  (U.S. Dist. Ct., S.D. Cal. Case No. 11-cv-2229-L, July 24, 2012)…………………….. 10-11, 20, 25

17  *Nguyen v. Bank of Am., N.A.*, No. 11-03318, 2011 WL 5574917, *9

18  (N.D. Cal. Nov. 15, 2011)…………………………………………………………………..12

19  *Powell v. GMAC Mortg. LLC*, No. 09-04928, 2010 WL 4502705, *4 (N.D. Cal. 2010)…………..19

20  *Robinson v. Bank of Am.*, 2012 WL 1932842…………………………………………………15

21  *Rodriguez v. Litton Loan Servicing LP*, No. 09-00029, 2009 WL 1326339, *7

22  (E.D. Cal. May 12, 2009)……………………………………………………………………14

23  *Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir. 1987)……………………7

24  *Sacchi v. Mortgage Electronic Registration Systems, Inc.*,

25  No. CV 11-1658 AHM (CW,), 2011 WL 2533029, at *9-10 (C.D. Cal. June 24, 2011)…………15

26  *Sami v. Wells Fargo Bank*, No. 12-00108, 2012 WL 967051, *5 (N.D. Cal. Mar. 21, 2012)……..12

27  *Santos v. Countrywide Home Loans*, No. 09-02642, 2009 WL 3756337, *5

28  (E.D. Cal. Nov. 6, 2009)………………………………………………………………....13

*Sepehry-Fard v. Aurora Bank, FSB*, No. 12-00871, 2012 WL 4392445, *2

(N.D. Cal. Sept. 25, 2012)……………………………………………………………………….12

*State of Nevada vs. Bank of America et al.,*

No. 3:11-cv-00135RCJ, (C.D. Nev. August 30, 2011)…………………………...…………….8

*Tamburri v. Suntrust Mortgage, et al.*

No. C-11-2899 EMC WL 6294472 (N.D. Cal. Dec. 15, 2011)…………………………………15

*Trinh v. Citibank, NA*, No. No. 12-03902, 2012 WL 6574860, *6 (N.D. Cal. Dec. 17, 2012)…….18

*United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981)…………………………8

*Usher v. Chase Home Fin. LLC*, No. 10-2202, 2010 WL  4008496, *4 (E.D. Cal. 2010)………...19

*Vissuet v. Indymac Mortg. Services,*

No. 09-CV-2321-IEG (CAB), 2010 WL 1031013 at *2 (S. D. Cal. March 19, 2010)…………….15

*Vogan v. Wells Fargo*, 2011 WL 5826016 (E.D. Cal. 2011)……………………………………11,21

*Woodard v. City of Menlo Park,* No. CV 09-3331 SBA (E.D.Cal.2009)…………………………..20

**STATE CASES**

*Das v. Bank of Am.*, 186 Cal. App. 4th 727, 741 (2010)………………………………………16

*Dimock v. Emerald Properties*, (2000) 81 Cal. App. 4th 686, 678……………………………14

*FDIC v. Dintino,* 167 Cal. App. 4th 333, 346 (2008)………………………………………….24

*Glaski v. Bank of America, N.A.*, Court of Appeals

(Cal. 5th District, July 31, 2013…………………………………………………………..9,10, 20

*Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1156 (2011)………………..14

*Guido v. Koopman* (1991) 1 Cal.App.4th 837, 843………………………………………….23

*Herrera v. Federal Nat. Mortg. Assn.*, 205 Cal.App.4th 1495, 1506 (2012)……………………..9

*Jenkins v. JP Morgan Chase  Bank, N.A.*, 216 Cal.App.4th 497, 512 (2013)……………………9

*Lectrodyer v. SeoulBank* (2000) 77 Cal. App. 4th 723,726……………………………………24

*Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 113 (2011)…………………………………....15

*Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010)…………………………………….16

*Manderville v. PCG &S Group, Inc.* (2007) 146 Cal. App. 4th 1486, 1502……………………..22

*Miller v. Cote* (1982) 127 Cal. App. 3d 888, 894…………………………………………….24

*Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1093 (1991)………….....16

*Onofrio v. Rice,* 55 Cal. App. 4th 413, 424 (1997)……………………………………………15

*Peterson v. Cellco P'ship,* 164 Cal. App. 4th 1583, 1593 (2008)………………………………..24

*Robinson v. Countrywide Home Loans, Inc.*, 199 Cal. App. 4th 42, 46 n. 5 (2011)………………15

*Shimpones v. Stickney*, 219 Cal. 637, 649 (1934)……………………………………………17

*Stevens v. Superior Court* (1986) 180 Cal. App. 3d 605, 608. ………………………………...22

*Teselle v. McLoughlin*, 173 Cal.App.4th 156 (2009)…………………………………………..25

**STATUTES AND RULES**

Rule 12(b)(6) of the Federal Rules of Civil Procedure ............................................................*passim*

15 U.S.C. § 1692…………………………………………………………………...18

28 U.S.C. Section 220…………………………………………………………………13

California Penal Code §115………………………………………………………………5

Cal. Penal Code §532(f)(a)(4)………………………………………………………………5

Cal. Civ. Code §2924.(a)(6)………………………………………………………………....6

Cal. Civ. Code §2924.(a)(1)………………………………………………………………5-6

Civil Code § 2924.17……………………………………………………………………13,21

Cal. Civ. Code §2934a.(a)(1)(A)………………………………………………………………19,21

California Homeowners' Bill of Rights……………………………………………………21

Business and Professions Code Section 17200 *et seq.*.......................................................................19

**Treatises**

5 Witkin, Cal. Proc. 4th (1997) Pleading, section 775-776, p. 233……………………………..25

**TO THE COURT, DEFENDANTS AND THEIR ATTORNEYS OF RECORD HEREIN:**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiffs' allege in the Complaint that Defendants do not have an enforceable interest in Plaintiffs' Loan. Defendants failed to address this issue in the motion to dismiss and state in conclusory argument that they may enforce the Subject Loan via its Assignment of the Deed of Trust. Defendants may do no such thing. Defendants seek to pursue rights which they know they do not have. The loan agreement is perfectly valid between the parties that executed the documents. Such loan agreement is not valid and therefore not enforceable by the false creditor before the Court today. The Court may grant relief upon Plaintiffs' claims as pleaded in Plaintiffs' Verified Complaint and the Court should deny the motion to dismiss and order Defendants to answer.

**I.  STATEMENT OF MATERIAL FACTS**

Plaintiff ROBERT MILLER is the owner of the Subject Property of this action, which is located at 2716 Nicasio Court, Santa Clara County, San Jose, California 95127 ("Property" or "Subject Property"). Plaintiff filed his Verified Complaint naming Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY ("DB") as Trustee for LONG BEACH MORTGAGE LOAN TRUST 2006-6, ASSET-BACKED CERTIFICATES, SERIES 2006-6 ("LBMLT 2006-6" or "Defendant MBS Trust"), JP MORGAN CHASE BANK N.A. ("CHASE") and SELECT PORTFOLIO SERVICING INC. ("SPS") as defendants.[1] The factual allegations of the Complaint not reiterated in full herein are incorporated herein by reference.

On May 4, 2006, Plaintiff executed a Deed of Trust ("DOT") and Note ("Subject Loan") on the Subject Property. The DOT identified Aidan West Financial Group ("AIDAN") as the Lender, Beneficiary and Trustee. **Compl., Ex. "A"**. Plaintiff alleges and believes thereon that on or around the time of origination of the Subject Loan, AIDAN attempted to securitize and sell his loan to

_____

[1] Plaintiff has an ongoing bankruptcy case and subsequent to the filing of this case, the bankruptcy case's Schedule B was amended to include the claims against Defendants herein.

1   another entity or entities. That entity was *not* CHASE or LBMLT 2006-6.  Plaintiff alleges on

2   information and belief that AIDAN never effectively transferred his Note to Washington Mutual,

3   ("WaMu") and that WaMu (as predecessor in interest Defendant CHASE) is merely a third-party

4   stranger to the transaction. Further, Plaintiff alleges that no Defendant can demonstrate that the Note

5   was ever properly endorsed and transferred to WaMu, CHASE or LBMLT 2006-6.  **Compl., ¶24**.

6         In compliance with LBMLT 2006-6's governing trust documents, the proper required "true

7   sales" chain of transfers required the Subject Loan to go from: AIDAN (as originator), to WaMu, (as

8   "Sponsor/Seller" and original "Servicer") to Long Beach Securities Corporation ("LBS")(as

9   "Depositor") and then to DB (as "Trustee" of LBMLT 2006-6).  **Compl., ¶25**.[2]  The Depositor,

10  concurrently with the execution of the PSA, transferred, assigned and conveyed to the Trust, *without*

11  *recourse,* all right, title and interest of the Depositor in the Mortgage Loans identified on the

12  Mortgage Loan Schedule. **Compl., ¶17.**   The Free Writing Prospectus at p. 72 lists the Subject

13  Loan as Loan No. 6727344.

14        A review of the chain of title on the Property done February 2013 from the official records of

15  the Santa Clara County Recorder does not show any assignment of the DOT from the original lender

16  AIDAN to any entity before the "Closing Date" of LBMLT 2006-6 on July 26, 2006.  Therefore,

17  there is no record of the required intervening assignments of the DOT from AIDAN to WaMu, LBS;

18  and ultimately to DB as Trustee for LBMLT 2006-6 before July 26, 2006. Because original lender

19  AIDAN failed to and assign the DOT and indorse the Subject Loan's Note to the purchaser, the

20  successor-lender to AIDAN is undocumented, resulting to an irreversible break in the chain of title

21  in and to the Subject Loan with the present beneficiary and real party in interest now unknown.

22  **Compl., ¶29.**  While the Subject Loan was in fact included in the LBMLT 2006-6 loan schedules

23  and the securitization parties behaved as though the Subject Loan was part of the trust res, the

24  parties involved failed to adhere to section 2.01 of the PSA, which requires that the Note be properly

25

26  [2] The PSA, which created LBMLT 2006-6 on July 1, 2006 was filed under oath with the SEC on August 8, 2006 as
27  Forms 8-K EX 4.1.  The PSA is the binding and operative contract governing the terms, operation, administration of this
    MBS Trust, as well as the ownership of the securitized mortgage loans.

28

1   endorsed, transferred, accepted and deposited with this MBS Trust by July 26, 2006.[3]  **Compl., ¶17,**

2   PSA, p. 73.  This "Closing Date" is the date by which all of the Notes must be transferred into

3   LBMLT 2006-6.  The failure to do so results in the Note not effectively being part of the trust res of

4   LBMLT 2006-6, such that it is not a loan that CHASE, LBMLT 2006-6 or SPS or their agents can

5   attempt to collect. **Compl., ¶¶17, 30, and FWP at** p. 72.

6       The original servicer of Plaintiffs' loan was AIDAN.  Subsequently, WaMu, CHASE

7   and now SPS purportedly assumed the servicing of the Subject Loan.  Because of the failed

8   securitization, LBMLT 2006-6 never received a valid intervening assignment and transfer of the

9   Subject Loan. DB, as Trustee for LBMLT 2006-6, is not the valid successor lender, mortgagee and

10   secured creditor and cannot legally authorize CHASE, SPS or other party to act as servicer for the

11   Subject Loan on behalf of the LBMLT 2006-6.

12       On January 24, 2007, Plaintiff and LBMLT 2006-6 entered into a loan modification.  At that

13   time, Plaintiff was unaware that LBMLT 2006-6 did not have a valid interest in the Subject Loan.

14   **Compl., Exhibit "C".**  The loan modification was executed by an unrelated entity to the Lender and

15   the Subject Loan: neither WaMu nor DB is a party to the original loan transaction between the

16   borrower and lender AIDAN.  There is no record of any legal document on or before the execution

17   of this loan modification to show that WaMu or DB has any right, power and/or authority to validly

18   enter into such agreement with the borrower.  In February 2013, Plaintiff reviewed title to his

19   Property and discovered strangers to his loan transaction filed false documents against his Property.

20   Plaintiff then hired a loan auditor and legal counsel to bring these claims in July 2013.

21       Despite having no legal existence on February 6, 2008 AIDAN, purportedly assigned the DOT

22

---

23   [3]  Adherence to the securitization agreements determine whether there was a transfer effected or not because under NY

24   trust law a transfer not in compliance with a trust's documents is void. There has to be actual delivery in as perfect a manner as possible; a "mere recital" is not sufficient. New York's common law trust principles, which are well-settled,

25   are applicable here. Under New York law, for a trust to be valid, there are four essential elements: (1) a designated beneficiary; (2) a designated trustee who is not the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) actual delivery or legal assignment of the property to

26   the trustee, with the intention of passing legal title to the trustee.  *Brown v. Spohr,* 180 N.Y. 201, 209-210 (N.Y. 1904).  Under New York law, without a valid delivery of the asset in question to the trust, there are no rights

27   conferred in the trustee under the common law.  Thus, if the trust fails to acquire property, then there is no trust over that property that may be enforced.

28

1   to "Washington Mutual Bank Successor in Interest to Long Beach Mortgage Company By

2   Operation of Law' *together with the note or notes*."  This assignment was purportedly executed by

3   Aneela Rafique as "Director of Banking Operations" in which she intentionally misrepresented to

4   Plaintiff in writing that WaMu as successor to LBM had acquired an interest in the Subject Loan.

5   This is false and legally impossible because AIDAN had already sold the Subject Loan in 2006.

6   Plaintiff disputes the contents and authenticity of this First Assignment.  **Compl., Exhibit "D"**.

7   Plaintiff contends the Assignment is invalid and fraudulent for several reasons:  (i) AIDAN was no

8   longer an operating entity as of November 6, 2007 because AIDAN's corporate entity was

9   suspended and no longer licensed to operate in California.  While the Note is referenced in the

10  Assignment there is no supporting evidence that the underlying original Note was in fact endorsed

11  and transferred by AIDAN to WaMu or to any entity.  Corporate acts require a legally existing

12  corporation; (ii) AIDAN had already long sold the Subject Loan without recourse in 2006.

13  Thereafter WaMu irrevocably sold the Subject Loan together with other mortgages in a pool to

14  LBS before July 26, 2006.  AIDAN's ownership rights and beneficial interest in the Subject Loan

15  was effectively extinguished upon sale and LBS represented and warranted in the binding PSA that

16  it irrevocably sold the Subject Loan into LBMLT 2006-6 before July 26, 2006; (iii) Pursuant to the

17  PSA, only Depositor LBS, and no other, may contribute and assign loans to LBMLT 2006-6 before

18  the Closing Date; (iv) the recorded "Assignment" was executed after the Closing Date. The dubious

19  "Assignment" raises numerous red flags and further demonstrates that the Subject Loan was not

20  effectively deposited into LBMLT 2006-6 by the Closing Date, and that the "Assignment" was

21  fabricated in attempt to "paper over" fatal transfer defects; (v) The failure to deposit Plaintiff's Note

22  into LBMLT 2006-6 before the closing date is a violation of the PSA and of New York trust law and

23  therefore ineffective.  Consequently, LBMLT 2006-6 cannot claim any legal or equitable right, title

24  or interest in Plaintiff's Note because LBMLT 2006-6 and its agents CHASE and SPS cannot take

25  any unauthorized action in contravention of the agreements governing LBMLT 2006-6.

26       A Substitution of Trustee ("SOT") dated as of February 11, 2008 was issued by WaMu,

27  purportedly signed by Deborah Brignac as Vice President of WaMu.  The SOT instrument purports

28  to appoint California Reconveyance Company ("CRC") as substitute trustee in the DOT in place of

AIDAN.  Plaintiff alleges that no such substitution ever occurred and that Deborah Brignac is not the "Vice President" for WaMu.  CRC is not a valid substitute trustee since its purported power and authority was derived from this false instrument.  **Compl., Exhibit "F"**.

A Notice of Default and Election to Sell Under Deed of Trust ("NOD2") dated as of April 2, 2009 was issued and recorded by CRC as purported "Trustee".  **Compl., Exhibit "I"**.  NOD2 recites as a matter of historical record only that AIDAN was the Beneficiary when the original DOT was recorded. CRC purposefully obscures whether AIDAN is still the present Beneficiary.  CRC only states in the NOD "*the present Beneficiary,"* without specifically identifying the beneficiary at the time of recordation. Therefore, the NOD was not issued by a party specified in Section 2924.(a)(1) and was knowingly issued in violation of Section 2924.(a)(1) and is void. The act of recording this fraudulent document also constitutes actionable criminal fraud and a felony.[4]

A Second Assignment of Deed of Trust ("Second Assignment") dated as of August 27, 2009 was issued and recorded by CHASE, purportedly as successor-in-Interest to WaMu as successor-in-interest to LBM.  Jodi Sebatta (sp) signed this mortgage instrument purportedly as attorney-in-fact. In the Second Assignment CHASE purports to grant, assign and transfer all its rights in the DOT to DB, as Trustee for the LBMLT 2006-6. Plaintiff disputes the contents and authenticity of the Second Assignment.  **Compl., Exhibit "J"**.  A Notice of Trustee's Sale ("NOTS") dated February 1, 2011 was issued and recorded by CRC, as purported Substitute Trustee.  The sale was scheduled for February 24, 2011 but did not occur.  **Compl., Exhibit "K"**.  A second Notice of Trustee's Sale ("NOTS2") dated March 12, 2013 was issued and recorded by CRC, as purported Substitute Trustee and signed by Brenda Batten, purportedly as Assistant Secretary for CRC.  The sale was scheduled for April 2, 2013 but did not occur. **Compl., Exhibit "L"**.

CRC is not a valid substituted trustee in the DOT since its purported power and authority was derived from an invalid SOT instrument.  **Compl., ¶¶44-51**.  Because the SOT is a nullity, it follows

---

[4] California Penal Code §115 provides that: Any person who knowingly procures or offer any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine might be filed, registered or recorded under any law of this state or of the United States, is guilty of a felony. *See also* Cal. Penal Code Section 532(f)(a)(4).

1   that the NODs and this NOTS issued by CRC is also invalid.  Cal. Civ. Code Section 2924.(a)(6)

2   and Section 2924.(a)(1) of the non-judicial foreclosure statute provides that an NOD may only be

3   issued by a mortgagee, trustee, beneficiary or any of their authorized agents.[5]  Cal. Civ. Code

4   Section 2924.(a)(6).  The NOD could not have been issued by, or on behalf of, a mortgagee, trustee,

5   beneficiary or any of their authorized agents.

6        The review of the chain of title on February 15, 2013 does not show any record of original

7   lender AIDAN assigning the DOT and the Subject Loan to WaMu by July 26, 2006. Because such

8   assignment and transfer never occurred as verified, WaMu could not and did not effectively transfer

9   the Subject Loan to LBS. Therefore, LBS could not and did not validly transfer the Subject Loan to

10   DB, as Trustee. **Compl., ¶60.**

11        CHASE's Assignment on August 27, 2009 is a prohibited transaction under the PSA.  The

12   Closing Date is an absolute deadline after which the trustee of LBMLT 2006-6 is strictly prohibited

13   from accepting any contribution of an asset. Any late or out-of-date loan transfer is a Prohibited

14   Transaction.  DB, as Trustee for the LBMLT 2006-6, has no power or authority to act outside of the

15   scope of the powers conferred upon the Trustee under the securitization agreement. **Compl., ¶60.**

16   Therefore, LBMLT 2006-6 never received a valid assignment and transfer of the Subject Loan on or

17   before July 26, 2006 pursuant to the terms of the governing PSA. When original lender AIDAN sold

18   the Subject Loan but failed to assign the DOT and transfer/endorse the original Note to

19   securitization Sponsor WaMu before the Closing Date, the chain of title in the Subject Loan was

20   irreversibly broken creating a cloud on the title of the Property, to the detriment of the borrower.

21   **Compl., ¶62.**  Because the Subject Loan was never effectively assigned and transferred to LBMLT

22   2006-6 before its Closing Date, it does not hold the title and beneficial interest in the Subject Note

23   and DOT.

24   _____

25   [5] Cal. Civ. Code Section 2924.(a)(6)provides:

26   No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the

27   beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of

28   authority designated by the holder of the beneficial interest.

Plaintiff brings claims against a false creditor and does not seek to obtain title to his home free and clear of his debt.  Any amount paid to Defendants is not a set off to an amount owed to a true creditor.  The fact that no creditor other than Defendants today seek to enforce the Subject Loan is no defense to Plaintiff's claims that Defendants attempt to enforce an unenforceable debt.  Plaintiff does not deny owes payment but to whom he owes payment and in what amount is at issue in the Complaint.  Plaintiff claims these Defendants have no enforceable interest.

## II. STANDARD OR REVIEW FOR MOTION TO DISMISS

Motions to dismiss for failure to state a claim under Federal Rules of Civil Procedure, Rule 12(b)(6) are viewed with disfavor, and accordingly, dismissals for failure to state a claim are "rarely granted." *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  The standard for dismissal under Rule 12(b)(6) is a stringent one.  "[A] complaint should not be dismissed for failure to state a claim unless it appears **beyond doubt** that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *See Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 811 (1993) *(quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Cervantes v. City of San Diego,* 5 F.3d 1273, 1274 (9th Cir. 1993) (emphasis added).

The purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief in the complaint.  *See Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir. 1987).  The complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Moreover, the court must draw reasonable inferences in the plaintiff's favor. *Doe v. United States,* 419 F.3d 1058, 1062 (9th Cir. 2005).  A 12(b)(6) motion is not a procedure for resolving a contest about the facts or the merits of the case.  In reviewing the sufficiency of the complaint, the issue is not whether the plaintiff will ultimately prevail, but whether the Plaintiff is entitled to offer evidence to support the claims asserted.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Inquiry into the adequacy of the evidence is improper.  *Enesco Corp. v. Price/Costco, Inc.,* 146 F. 3d 1083, 1085 (9th Cir. 1998). Furthermore, more recently, the United States Supreme Court has held that to survive a motion to dismiss, a complaint n e e d  o n l y  contain sufficient

factual matter, accepted as true, would "state a claim to relief that is plausible on its face." *See Bell Atlantic Corp. v. Twombly,* 55 US 544 (2007). For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under rule 12(b)(6). *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

## III. ARGUMENT

### A.  Plaintiffs' Claims vs. SPS

Defendant SPS claims there are no allegations against it in the Complaint.  The specific facts and claims against SPS are in fact alleged in the Complaint.  SPS claims to be a purported servicer of the Subject Loan.  As servicer, SPS demanded payments and participates in conjunction with the predecessor servicer CHASE and principal LBMLT 2006-6 in an attempt to collect on a debt of which it is not entitled.  **Compl., ¶¶21, 30, 35, 27, 41, 69, 74, 75-80, 84, 87-88, 91-93, 101, 105, 116, 128, 132-133, 137, 148-151, 154** and **156.**  In said referenced paragraphs, Plaintiff alleges what conduct of which Defendant SPS is responsible.  *In re Sagent Tech., Inc.*, 278 F.Supp.2d 1079, 1094 (N.D. Cal. 2003); *Corazon v. Aurora Loan Services, LLC*, No. 11-00542, 2011 WL 1740099, *5 (N.D. Cal. May 5, 2011).  To the extent SPS argues that its Motion to Dismiss should be granted on these grounds, Plaintiff requests that the Motion to Dismiss should be denied on this basis.

### B. "Defective" Legal Theory Defense

Defendants claim Plaintiff's Complaint seeks relief pursuant to defective legal theories of which the Court may not grant relief.  Plaintiff disagrees.  First, Plaintiff does not allege that

---

[6] As the nonpublished opinion filed on July 31, 2013, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.  The *Glaski* opinion was ordered published August 8, 2013.

[7] These allegations are identical to those brought by the Nevada Attorney General against Bank of America in which Attorney General Catherine Cortez Masto alleges that these entities engaged in unlawful and deceptive practices by misrepresenting to homeowners that they had authority to foreclose despite the fact that there were fatal deficiencies in transfers to the securitzation Trusts. *State of Nevada vs. Bank of America et al.,* No. 3:11-cv-00135RCJ, (C.D. Nev. August 30, 2011). The AG concludes that, "[t]hese are not mere technicalities. The PSA's spelled out specific procedures in order to ensure a proper transfer, protect the Trusts as the holders in due course, and avoid subjecting the Trusts to taxation. In addition, borrowers need to know the actual holders of their mortgages so that, for example, they can investigate and assert available defenses in foreclosures, including that the agent of the trustee lacks authority or standing under the Note."

Defendants are required to "produce the promissory note or otherwise prove it holds the note" to nonjudicially foreclose. *Jenkins v. JP Morgan Chase  Bank, N.A.*, 216 Cal.App.4th 497, 512 (2013).  Defendants misread the complaint as Plaintiffs allege no "show me the note" theory.  To state a claim premised on the assertion that a party lacks standing to foreclose, a plaintiff must allege facts showing "not only that the purported … assignment was invalid, but also that [the defendant] did not receive an assignment of the debt in any other manner." See *Herrera v. Federal Nat. Mortg. Assn.*, 205 Cal.App.4th 1495, 1506 (2012).  Such are the allegations in the Complaint: LBMLT 2006-6 did not obtain the Subject Loan by effective transfer of the debt.  **Compl., ¶¶17-20, 24-30, 34-35, 37-38** and **41.**

Second, Defendants argue that Plaintiffs do not have "standing" to complain about the assignments.  The very recent decision of *Glaski v. Bank of America, N.A.*, Court of Appeals (Cal. 5th District, July 31, 2013)[6] is a decision that is based upon the very similar facts and allegations as Plaintiffs claim here.  LBMLT 2006-6 is a foreclosing entity that is not the true owner of the loan because its chain of ownership had been broken by a defective transfer of the loan to the MBS Trust. The specific defect alleged in *Glaski* (as the Plaintiff does here) is that the attempted transfers were made after the closing date of the MBS Trust holding the pooled mortgages and therefore the transfers were ineffective.  The court held that the successor parties' attempt to enforce such a debt failed.  The *Glaski court* concluded:

> [T]hat a borrower may challenge the securitized trust's chain of ownership by alleging the attempts to transfer the deed of trust to the securitized trust (which was formed under New York law) occurred after the trust's closing date. Transfers that violate the terms of the trust instrument are void under New York trust law, and borrowers have standing to challenge void assignments of their loans even though they are not a party to, or a third party beneficiary of, the assignment agreement. We therefore reverse the judgment of dismissal and remand for further proceedings.

*Glaski v. Bank of America, N.A.*, Court of Appeals (Cal. 5th District, July 31, 2013) at 1.

Defendants' arguement related to the transfer of the note and deed of trust rightfully apply to true creditors.  The transferee of the Subject Loan, LBMLT 2006-6, did not effectively take title to the Subject Loan as alleged in the Complaint and herein.  Its transferor had nothing to transfer

because: (i) AIDAN was not in existence, could not legally transfer anything and (ii) no effective transfer of the Subject Loan or DOT was ever made by AIDAN to any entity until the defective Assignment years after LBMLT 2006-6 closed and was prohibited from accepting further contributions of assets.  Therefore, LBMLT 2006-6 never acquired any legal or equitable beneficial interest in the Subject Loan and is without authority to enforce the DOT or to collect mortgage payments from the Plaintiff.  *Glaski v. Bank of America, N.A*., Court of Appeals (Cal. 5th District, July 31, 2013) at 1.

Any further attempted "fix" at this present date by any entity without an interest in the Subject Loan is impermissible because: (i) it would be far too late past the Closing Date; (ii) the assignment would not follow the chain of title if it transfers directly to the MBS Trust without intervening indorsements (loan originator-to sponsor-to-depositor-to the MBS trust); and (iii) it will only occur after the Subject Loan was in default, a non-qualified loan.

The right of the original lender to sell and securitize the Subject Loan is not in dispute here. The mortgagor (and Plaintiffs) may not claim standing in the mortgage securitization *per se* but rather alert the Court to the fact that as a result of the failure of AIDAN and the successor parties to follow their own governing agreements, the true owner of the Subject Loan is undocumented, unassigned and now unknown.  *Glaski v. Bank of America, N.A*., Court of Appeals (Cal. 5th District, July 31, 2013) at 1.  Original lender AIDAN and its successors and assigns, extinguished their respective rights and beneficial interest in the Subject Loan after the balance of the Subject Loan was paid in full in the sale transaction by the closing date of July 26, 2006.

Courts have failed to recognize these after sale assignments.[7] In one, the court rejected two assignments prepared years after the MBS trust closing date: "[The] [b]ank failed to show that it had standing to file [its claim] and also failed to show at the hearing that it is entitled to enforce the note and mortgage" and the claim was disallowed under 11 U.S.C. § 502(b)(1).  *In re Wells,* 407 B.R. 873, 883 (Bkrtcy. N.D.Ohio 2009).  In *Naranjo v. SBMC Mortgage, JP Morgan, US Bank et al.* (U.S. Dist. Ct., S.D. Cal. Case No. 11-cv-2229-L, July 24, 2012), the plaintiff alleged as does Plaintiff herein, that there exists no evidence that the Subject Loan was *effectively*

assigned to LBMLT 2006-6 before July 26, 2006.  The *Naranjo* court ruled that the "assignment of the loan into the [trust] was not completed by [the closing date of the trust] as required by the Trust Agreement. This allegation gives rise to a plausible inference that the subsequent assignment, substitution, and notice of default and election to sell may also be improper."  The *Naranjo* plaintiff and Plaintiff herein alleges that "the transfer of rights to the [trust] is improper, thus Defendants consequently lack the legal right to either collect on the debt or enforce the underlying security interest." *Id.*  Similarly in *Vogan v. Wells Fargo*, 2011 WL 5826016 (E.D. Cal. 2011), the court allowed a Section 17200 claim when plaintiffs alleged that assignment was executed after the closing date of the trust under its PSA giving rise to plausible inference that some part of the recorded assignment was fabricated. In *Vogan*, the Court found plaintiff not excluded in making claims based on allegations surrounding the loan's securitization. As in the *Naranjo and Vogen* cases, Plaintiff herein alleges both violations of the trust agreements and relevant law.  *Vogan v. Wells Fargo*, 2011 WL 5826016 (E.D. Cal. 2011).  The Plaintiff  in the case of *Johnson v. HSBC et al.* (U.S. District Court, S.D. California Case No. 3:11-cv-2091-JM-WVG), as Plaintiff does so here, alleged that the "document purporting to assign the Deed of Trust to [the trust] … was fraudulent, in part because the assignment was executed after the closing date of the trust, which violates the [PSA]."  The *Johnson* court acknowledged that "the overwhelming authority does not support a cause of action based upon improper securitization" finding that, as in this case, "plaintiff [did] not dispute the right to securitize the mortgage, but allege[d] that as a result of improper procedures, the true owner of his mortgage is unclear . . . which was based on alleged improper transfer due to alleged fraud in signing of documents."  This Court should reach the same result based upon the allegations in the Complaint.

In this instant case, original lender AIDAN's interest in the subject Subject Loan was effectively extinguished on the date of sale of the Subject Loan before July 26, 2006. The failure on the part of the securitization parties to adhere to their own trust agreements consequently resulted to an irreversible break in the chain of title, with the true beneficiary and real party in interest in and to the Subject Loan unknown.  This cloud on tile is detrimental to the mortgagor

and is requested to be resolved by the Court.

The issue of enforcing a foreclosure on the underlying note has nothing to do with whether or not LBMLT 2006-6 has a perfected security interest in the Property via the deed of trust. While perfection deals with recording the deed of trust with the county recorder when the loan is originated and is typically done in most cases, the party attempting to enforce the Note must still qualify under the law to enforce the note pursuant to controlling law (here, the trust law of New York). Perfection should not be confused with transfer, assignment and ownership rights in the notes on the one hand and in the deed of trust and mortgage on the other.

Third, securitization is not alleged to make the debt unenforceable. Defendants have no enforceable debt against Plaintiff because its predecessor never effectively transferred the Subject Loan to LBMLT 2006-6. Securitization is referenced only as a foundational matter of defendants alleged rights and not referenced because securitization by itself invalidates the debt. Cases cited by Defendants are therefore factually different than Plaintiffs claims in the Complaint: *Nguyen v. Bank of Am., N.A*., No. 11-03318, 2011 WL 5574917, *9 (N.D. Cal. Nov. 15, 2011), *Lane v. Vitek Real Estate Industries Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010); *Sami v. Wells Fargo Bank*, No. 12-00108, 2012 WL 967051, *5 (N.D. Cal. Mar. 21, 2012); *Sepehry-Fard v. Aurora Bank, FSB*, No. 12-00871, 2012 WL 4392445, *2 (N.D. Cal. Sept. 25, 2012); *Lomely v. JP Mortgage Chase Bank, N.A*., No. 2-01194, 2012 WL 4123403, *3 (N.D. Cal. Sept. 17, 2012). No such bare allegations are made in this case as the Plaintiffs did in said cases.

Fourth, Defendants argue that defects in foreclosure process must be alleged for wrongful foreclosure. Plaintiff Complaint does contain a claim a wrongful foreclosure. Rather, Plaintiff alleges that LBMLT 2006-6 did not receive the Subject Loan as trust res under the terms of the trust and also under controlling law – New York. *See* n. 3 *supra*. The assignment was therefore made by a party without authority because it had nothing to assign. LBMLT 2006-6 did not obtain the Subject Loan by an assignment or effective transfer of the debt. **Compl., ¶¶17-20, 24-30, 34-35, 37-38** and **41.** The substitution is made by a party without authority because of the void assignment. The NOD is made by this improperly substituted trustee. None of the false

documents (Assignment, NOD, Substitution and NOTS) are based upon verified information prior to their issuance by Defendants and their agents in violation of Civil Code § 2924.17 which requires these documents to be recorded on behalf of a servicer in connection with a foreclosure and is required to be "accurate and complete and supported by competent and reliable evidence." It further requires the servicer to ensure it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose.

To the extent Defendants argues that its Motion to Dismiss should be granted on these grounds, Plaintiff requests that the Motion to Dismiss should be denied on this basis.

**C. Plaintiff's Declaratory Relief Claim is Sufficiently Pleaded as a Matter of Law**

First, Plaintiff's claim for Declaratory Relief is based upon Title 28 of the United States Code ("DJA") Section 220 and provides that "in a case of actual controversy within its jurisdiction the court . . . may declare the rights and other legal relations of any interested party seeking such declaration and ha[s] the force and effect of a final judgment." Plaintiff alleges in the Complaint the divergent positions of the parties and requests the Court grant such a declaration. **Compl., ¶¶81-89.** *Santos v. Countrywide Home Loans*, No. 09-02642, 2009 WL 3756337, *5 (E.D. Cal. Nov. 6, 2009).

Plaintiff sufficiently alleges the claims set forth in the Complaint against each of the Defendants. A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns,* 15 F.3d 142, 143 (9th Cir. 1994). As the case of *Macris v. Bank of America, N.A.*, No. 11-1986, 2012 WL 273120, *7 (E.D. Cal. Jan. 30, 2012) points out, declaratory relief is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Plaintiff contends that the allegations in the Complaint serve a compellingly useful purpose in that such a declaration will prohibit a false creditor form enforcing an unenforceable debt between the parties. Such declaration from the Court will conclude this issue as between the parties and grant relief from the uncertain nature of Defendants' purported enforceability of the Subject Loan. *Id.*

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Plaintiff alleges there is such a controversy.  *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941). The U.S. Supreme Court explained that it is "definite and concrete… real and substantial controversy admitting of specific relief through a decree of a conclusive character.  *Id.*  Plaintiff contends he has viable claims and alleges an actual controversy against Defendants.

Second, contrary to Defendants' argument, Plaintiffs contend that there is no "testing" Defendants ability to foreclose in this case.  *Gomes v. Countrywide Home Loans, Inc.,* 192 Cal.App.4th 1149, 1154 (2011).  Plaintiff discovered evidence that LBMLT 2006-6 has not obtained the Subject Loan and alleges the improper party seeks to enforce a debt of which they do not own or in which otherwise they have any interest.  If Defendants elect to present evidence to the Court that they have in fact properly received the Subject Loan prior to the LBMLT 2006-6's closing date, then Defendants are free to do so.  Plaintiff's Complaint nowhere alleges that LBMLT 2006-6 has to do so.  Instead, the Complaint contains allegations that LBMLT 2006-6 never obtained the Subject loan and therefore cannot enforce it.  **Compl., ¶¶17-20, 24-30, 34-35, 37-38** and **41**.

Third, Plaintiff does not sue for wrongful foreclosure and Plaintiff alleges that tender is not required under these circumstances.  Defendants reference *Rodriguez v. Litton Loan Servicing LP*, No. 09-00029, 2009 WL 1326339, *7 (E.D. Cal. May 12, 2009) where the court dismissed a claim for declaratory relief when Plaintiff failed to allege tender.  *Rodriguez* is a case factually post-foreclosure - Plaintiffs sought to set aside a completed foreclosure sale.  Such authority is inapplicable to this case under our facts as there has been no foreclosure and such tender argument should be disregarded by the Court.

Plaintiff does not allege irregularities in the foreclosure process.  Instead, he alleges that Defendants nor their agents are a real party in interest having standing to foreclose on the Property.  Under these facts, Plaintiffs have no obligation to tender "any money at all to any defendant".

1   *Frazier v. Aegis Wholesale Corp., et al.*, No. C-11-4850 EMC (N.D. Cal. Dec. 16, 2011) at 4.

2   Moreover, where as here, the impending foreclosure is void and not voidable, tender is not required.

3   *Tamburri v. Suntrust Mortgage, et al.,* No. C-11-2899 EMC, 2011 WL 6294472 at *4 (N.D. Cal.

4   Dec. 15, 2011); *Dimock v. Emerald Properties*, (2000) 81 Cal. App. 4th 686, 678. *Barbieri v. Pwfg,*

5   2013 U.S. Dist. LEXIS 429 at *6 (N.D. Cal. Jan. 2, 2013).  The foreclosure sale in this case is void

6   also because the purported trustee was not properly substituted as trustee, had no interest in the

7   Property of Plaintiff, and this was not authorized to initiate a non-judicial foreclosure when it

8   recorded the NOD.  *Id and see also Avila v. Wells Fargo Bank*, No. 12-01237, 2012 WL

9   2953117,*15 (N.D.Cal. July 19, 2012).  Plaintiffs allege herein that any arrearages are offset by the

10  damages suffered by Plaintiffs caused by Defendants' illegal and fraudulent activity.  For this

11  addition reason, Plaintiffs are not required to allege tender.  *See also Onofrio v. Rice,* 55 Cal. App.

12  4th 413, 424 (1997) (grant of relief to plaintiff on rescission claim without tender); *Lona v. Citibank,*

13  *N.A.*, 202 Cal. App. 4th 89, 113 (2011) (tender not required where inequitable ); *Sacchi,* 2011 WL

14  2533029 at *10; *Tamburri*, 2011 WL 6294472 at *3.  In the instant case, as in the above authority,

15  Plaintiff should not be required to make a full tender offer because Plaintiff challenges Defendants

16  legal power to foreclose.

17          In addition, the tender rule applies only in cases seeking to set aside a completed sale, rather

18  than an action seeking to prevent a sale in the first place.  As in *Barrionuevo v. Chase Bank, N.A.*,

19  885 F. Supp. 2d 964 (2012), a growing number of federal courts have explicitly held that the tender

20  rule only applies in cases seeking to set aside a completed sale, rather than an action seeking to

21  prevent a sale in the first place. *See, e.g.*, *Vissuet v. Indymac Mortg. Services*, No. 09-CV-2321-IEG

22  (CAB), 2010 WL 1031013, at *2 (S.D. Cal. March 19, 2010) ("[T]he California 'tender rule' applies

23  only where the plaintiff is trying to set aside a foreclosure sale due to some irregularity."); *Giannini*

24  *v. American Home Mortg. Servicing, Inc.*, No. 11-04489 TEH, 2012 WL 298254, at *3 (N.D.Cal.

25  Feb.1, 2012) ("While it is sensible to require tender following a flawed sale – where irregularities in

26  the sale are harmless unless the borrower has made full tender – to do so prior to sale, where any

27  harm may yet be preventable, is not."); *and also Robinson v. Bank of Am.*, 2012 WL 1932842.

28  California courts have also declined to view the 'tender rule' as a bar to bringing actions seeking to

1    prevent a yet-to-be-completed foreclosure sale.

2          Also, in *Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010), the California Court of

3    Appeal found that a pre-foreclosure right under state law could be enforced by a borrower who had

4    not first tendered the full amount of indebtedness owed on his note. *Id*. at 225. The court reasoned

5    that "it would defeat the purpose of the statute to require the borrower to tender the full amount of

6    the indebtedness *prior* to any enforcement." *Id*. In such situations, "[a]ny irregularities in the sale

7    would necessarily be harmless to the borrower if there was no full tender." *Id*. That contrasts

8    markedly with a situation like the case at bar, where a borrower challenges the very authority of a

9    party to proceed with nonjudicial foreclosure. It would hardly be "harmless" to require borrowers to

10   tender the full amount owed in order to challenge what could be a wrongful foreclosure, where they

11   assert not simply a right of redemption but "the right to avoid a sale" in the first place.

12         Plaintiffs' claim for Declaratory Relief is sufficiently pleaded as a matter of law and the

13   Motion to Dismiss should be denied as to this claim.

14   **D. Plaintiffs' Negligence Claim is Sufficiently Pleaded as a Matter of Law**

15         Normally lenders and servicers do not owe a borrower a duty of care. *Nymark v. Heart Fed.*

16   *Savings & Loan Assn*., 231 Cal. App. 3d 1089, 1093 (1991). However, a bank may be liable in

17   negligence if it fails to discharge its contractual duties with reasonable care. *Das v. Bank of Am.*, 186

18   Cal. App. 4th 727, 741 (2010). Additionally, a bank may be liable for aiding and abetting a tort

19   when it renders substantial assistance to a tortfeasor during a business transaction that it knowingly

20   aided in the commission of the tort. *Id*. Plaintiff alleges that Defendants have such duty owed to

21   Plaintiff. **Compl., ¶92.**

22         Plaintiff specifically alleged facts of breach stating that LBMLT 2006-6 never obtained the

23   Subject Loan and it is therefore unenforceable as to this Defendant. **Compl., ¶¶17-20, 24-30, 34-35,**

24   **37-38** and **41**. Defendants argue that the Assignment of the DOT merely resulted in an exchange of

25   creditors. The authority to execute the pre-foreclosure documents are merely derivative of the rights

26   of the true creditor - LBMLT 2006-6 (and its agents) is not such a party. Plaintiff's damages are

27   proximately caused by LBMLT 2006-6 (and its agents) because he paid an invalid false creditor and

28   demands the payments be returned as they are no set off to a true creditors claim. Plaintiff has made

1  substantial payments to LBMLT 2006-6 (and its agents WAMU and CHASE) as follows:

2  $4,286.12/month for 12 months = $51,433.44. These payments were made for ten years totaling

3  $514,334.40. The fact there is no creditor (other than LBMLT 2006-6 and its agents) seeking

4  payment today is no defense by a false creditor seeking to obtain money of which is has no rights to

5  be paid. To the extent Defendants argues that its Motion to Dismiss should be granted on these

6  grounds, Plaintiff requests that the Motion to Dismiss should be denied on this basis.

7  **E. Plaintiff's Quiet Title Claim is Sufficiently Pleaded as a Matter of Law**

8  Plaintiff sets forth the statutory requirements of his claim for Quiet Title in the Complaint.

9  **Compl., ¶¶96-102**. Defendants argue that Plaintiffs' Quiet Title claim fails because Plaintiffs have

10  failed to allege tender. For the reasons set forth *supra* at Section III.C., Plaintiff should not be

11  required to allege tender. Defendants argue that "[i]t is settled in California that a mortgagor cannot

12  quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219

13  Cal. 637, 649 (1934). In this case, Plaintiff has sufficiently alleged in the Complaint that LBMLT

14  2006-6 (and its agents) is not the mortgagee. As discussed above at *supra* at Section III.C., Plaintiff

15  need not plead facts to allege tender as the wrong party is attempting to foreclose.

16  Second, Defendants argue the Assignment of the DOT affects only the rights of the assignee,

17  not Plaintiff. The DOT is meaningless without the Note. Plaintiff alleges LBMLT 2006-6 never

18  obtained the Subject Loan, has no interest in the Note and the DOT is not enforceable against

19  Plaintiff. **Compl., ¶¶17-20, 24-30, 34-35, 37-38** and **41**.

20  Third Defendants argue that Plaintiff asserts a "securitization" claim. As set forth *supra*

21  Section III B., Plaintiffs make no such "securitization" claim. MTD at p. 11. Rather, the Complaint

22  pleads specific facts that allege that LBMLT 2006-6 never obtained the Subject Loan for the reasons

23  set forth in the Complaint. *Id.* One reason of which is that there is no evidence that LBMLT 2006-6

24  obtained the Note or any interest in the Subject Loan. Defendants instead argue and expect the

25  Court to assume the underlying foundation for its claim to enforce the Subject Loan exists.

26  Fourth, Defendants argue Plaintiff claims immunity from paying his debt. Plaintiff does not

27  deny that he had to pay his creditor. Defendants before the court are a purported creditor that does

28  not have an enforceable interest in the Subject Loan. Plaintiff is of course required to pay off his

1   loan to his creditor.  LBMLT 2006-6 is not Plaintiff's creditor because of the reasons set forth herein

2   and in the Complaint.  **Compl., ¶¶17-20, 24-30, 34-35, 37-38** and **41.**  The cases Defendants cite

3   apply to lawful creditors and their debtors.  *Kelley v. Mortgage Electronic Registration Sys., Inc*.,

4   642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009).  Plaintiff has alleged in the Complaint that named

5   Defendants are not his lawful creditor.

6       Fifth, the defendant must have an interest that is adverse to Plaintiff's. See Code Civ. Proc. §

7   761.020. Here Plaintiff sufficiently alleges that LBMLT 2006-6 claims an interest adverse to

8   Plaintiff.  As SPS is only claiming servicing rights, Plaintiff does not allege SPS has an ownership

9   interest in the Subject Property but rather acts as an agent of a false creditor and should not be able

10   to claim any action against Plaintiff's Property.

11      To the extent Defendants argues that its Motion to Dismiss should be granted on these

12   grounds, Plaintiff requests that the Motion to Dismiss should be denied on this basis.

13   **F. Plaintiff's 15 U.S.C. § 1692 Claim is Sufficiently Pleaded as a Matter of Law**

14      Defendants argue that there is no genuine dispute as to which party is foreclosing on

15   Plaintiff's loan and that DB is the only entity attempting to do so.  MTD at p. 12.  As argued above

16   Section III. D., the fact that no competing creditor is claiming rights to the Subject Loan today is no

17   defense to the claims alleged in the Complaint that the wrong party asserts rights to the Note and

18   demands payments and attempts to foreclose.  For a FDCPA claim, Plaintiff must allege: "(1) that

19   he is a consumer within the meaning of 15 U.S.C. §§ 1692a(3) and 1692c(d); (2) that the debt arises

20   out of a transaction entered into for personal purposes; (3) that the defendant is a debt collector

21   within the meaning of 15 U.S.C. § 1692a(6); and (4) that the defendant violated one of the

22   provisions of the FDCPA, 15 U.S.C. §§ 1692a–1692o." *Gutierrez v. Wells FargoBank*, No. 08–

23   5586, 2009 WL 322915, *3 (N.D. Cal. 2009); accord *Trinh v. Citibank, NA*, No. No. 12-03902,

24   2012 WL 6574860, *6 (N.D. Cal. Dec. 17, 2012).  The *Trinh* is post foreclosure and not applicable

25   to our facts as Plaintiff is not seeking to set aside a foreclosure sale.

26      Plaintiff is a consumer and the debt is personal in nature.  LBMLT 2006-6 and its agents have

27   continually demanded payment on the debt of which its principal has no basis for such demands and

28   is therefore collecting on a debt.  Plaintiff has paid Defendants at least $514,334.40.  Any other

definition of debt collector makes no sense in this context.  Defendant violated the FDCPA by demanding the payments and receiving the payments despite not owning the Subject Loan. **Compl., ¶¶17-20, 24-30, 34-35, 37-38** and **41.**  *Powell v. GMAC Mortg. LLC*, No. 09-04928, 2010 WL 4502705, *4 (N.D. Cal. 2010).  Despite Defendants contrary argument, LBMLT 2006-6 and its agents have demanded and received payments related to an alleged debt.  Defendants make the disingenuous argument that they somehow are not collecting on a debt where the NOD says exactly that.  The reasoning and authority cited within *Casas v. Wells Fargo  Bank N.A.,*, 2012 WL 5877641 pertain to a valid beneficiary and party to a deed of trust.  "[F]oreclosure on a property based on a deed of trust does not constitute collection of a debt within the meaning of the FDCPA." *Usher v. Chase Home Fin. LLC*, No. 10-2202, 2010 WL  4008496, *4 (E.D. Cal. 2010).  Plaintiff alleges that no Defendant effectively obtained the Subject Loan and cannot enforce the related security agreement (DOT) because of such fact.

To the extent Defendants argues that its Motion to Dismiss should be granted on these grounds, Plaintiff requests that the Motion to Dismiss should be denied on this basis.

**G.  Plaintiffs' Claim for Violation of Business and Professions Code Section 17200 *et seq.* Is Sufficiently Pleaded as a Matter of Law**

Preliminarily, Plaintiffs have standing to pursue their Unfair Competition claim as the foreclosure proceedings initiated by defendants have put Plaintiffs' interest in their Property in jeopardy. *Clemens v. J.P. Morgan Chase Nat. Corporate Services, Inc*., No. C-09-3365 EMC, 2009 WL 4507742 at *7 (N.D. Cal. Dec. 1, 2009).  This cause of action is derivative in nature and Plaintiffs' ability to pursue this claim depends on the success of their substantive causes of action. Plaintiffs have alleged and established violations of law (Claims II, III, IV, VI, VII and VIII). **Compl., ¶¶105**. The allegations in the Complaint are based upon the fact that LBMLT 2006-6 has no enforceable interest in the Subject Loan.  **Compl., ¶¶17-20, 24-30, 34-35, 37-38** and **41.**

Plaintiffs have sufficiently pled violations of Business and Professions Code Section 17200 *et seq.* and the Motion to Dismiss should be denied as to this claim.

**H. Plaintiff's Section 2934a Claim Is Sufficiently Pleaded As a Matter of Law**

California Civil Code Section 2934a authorizes the beneficiaries under the trust deed or their successors in interest to substitute the trustee. Civ. Code § 2934a(a)(1)(A).  As alleged in the

1    Complaint, LBMLT 2006-6 has no enforceable interest in the Subject Loan.  **Compl., ¶¶17-20, 24-**

2    **30, 34-35, 37-38** and **41.**  The Assignment, Substitution, NOD and NOTS are ineffective because of

3    these alleged facts – no Defendant has enforceable rights to the Subject Loan, no substitution could

4    be made by such a party, and therefore no Assignment, NOD or NOTS could be issued in

5    compliance with the non-judicial foreclosure statute.  CRC could not be effectively substituted as

6    trustee in compliance with Section 2934a because the substitution was signed by Deborah Brignac, a

7    notorious robosigner. Compl. ¶¶120-121.

8            A judicially noticeable document cannot be relied upon for evidence of the truth of the matter

9    asserted therein, i.e. that a party is a beneficiary under a deed of trust or that a trustee is a lawful

10   beneficiary and should not be relied upon at the 12(b)(6) phase.  "As a general rule, 'a district court

11   may not consider any material beyond the pleadings in ruling on a Rule 12 (b)(6) motion.'"

12   *Woodard v. City of Menlo Park,* No. CV 09-3331 SBA (E.D.Cal.2009).  The Court is permitted to

13   consider material which is properly submitted as part of the complaint, documents not physically

14   attached to the complaint if their authenticity is not contested and the plaintiff's complaint

15   necessarily relies on them, and matters of public record.  *Gray v. City of West Sacramento,* No. CIV

16   S-08-0433 MCE DAD PS (E.D. Cal. 2008). While it is true that a court may take judicial notice of

17   matters of public record, it may not take judicial notice of disputed facts stated in those public

18   records.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  *See* Plaintiff's Objection

19   to Defendants' Request for Judicial Notice.  Plaintiff's alleges that Deborah Brignac was not "Vice

20   President" of WAMU and is a notorious robosigner.  **Compl. ¶120, Exhibit G.**   Plaintiff disputes

21   the contents and authenticity of the SOT, alleges that no such substitution ever occurred, that

22   Deborah Brignac is not the "Vice President" for WaMu and that the SOT was fraudulently signed

23   without WaMu's knowledge or authorization.  See ¶¶43-51 and **Exhibit "F"**. Defendants argue

24   Plaintiff may not challenge the SOT but there exist many cases that directly support such challenge

25   and squarely against Defendants that precisely match the facts in this case.  See *supra* Section III.B.

26   and authority cited therein.[8] Because WaMu is in fact not the lender, such SOT is void.  It is void for

27

28   [8] *Glaski v. Bank of America, N.A.*, Court of Appeals (Cal. 5th District, July 31, 2013), *In re Wells*, 407 B.R. 873, 883
     (Bkrtcy. N.D.Ohio 2009). *Naranjo v. SBMC Mortgage, JP Morgan, US Bank et al.* (U.S. Dist. Ct., S.D. Cal. Case No. 1-
                                                                                        (continued . . . )

1  the additional reason that, under Section 2934a(a)(1)(A) all beneficiaries must acknowledge the

2  substitution. In this instant case, an "*unknown present beneficiary*" did not acknowledge, authorize

3  or record the Substitution.

4       Plaintiff pleads facts related to prejudice arising from violations of Section 2934a because a

5  party not entitled to enforce the debt is attempting to do so.  Plaintiff seeks the Court's assistance in

6  preventing an unenforceable debt to be enforced.  To the extent Defendants argues that its Motion to

7  Dismiss should be granted on these grounds, Plaintiff requests that the Motion to Dismiss should be

8  denied on this basis.

9  **I. Plaintiff's Civil Code § 2924.17 Claim Is Sufficiently Pleaded As a Matter of Law**

10      The foreclosure sale of Plaintiff's Property has yet to occur and if it does occur, Defendants

11  must necessarily initiate and conclude such a trustee sale after January 1, 2013, the effective date of

12  the California Homeowners' Bill of Rights.  As such, the heightened protections of California

13  homeowners will apply to protect Plaintiffs from Defendants' wrongful conduct should they conduct

14  the sale pursuant to the statutorily deficient and unreliable documents recorded to date.  Plaintiff has

15  alleged facts throughout the Complaint that LBMLT 2006-6 has no enforceable interest in the

16  Subject Loan.  **Compl., ¶¶17-20, 24-30, 34-35, 37-38** and **41.** A party with no enforceable interest

17  in the Subject Loan is not permitted to substitute the trustee, assign the DOT, declare a default or

18  notice a trustee sale.  The Complaint sets forth such facts that such instruments were and are not

19  accurate and complete in violation of Civil Code § 2924.17 because such instruments are not and

20  cannot be supported by competent and reliable evidence.  To the contrary as alleged herein, these

21  instruments are false and fraudulent, and without any legal effect whatsoever. See ¶¶37-39 (First

22  Assignment); ¶¶43-51 (SOT); ¶¶56-57 (Second Assignment); ¶¶53-55 (NOD2) and ¶¶59-60

23  (NOTS2).  To the extent Defendants argues that its Motion to Dismiss should be granted on these

24  grounds, Plaintiff requests that the Motion to Dismiss should be denied on this basis.

25  **J. Plaintiff's Fraud Claim Is Sufficiently Pleaded As a Matter of Law**

26

27       ( . . . continued)
   v-2229-L, July 24, 2012), *Vogan v. Wells Fargo*, 2011 WL 5826016 (E.D. Cal. 2011); *Johnson v. HSBC et al.* (U.S.

28  District Court, S.D. California Case No. 3:11-cv-2091-JM-WVG),

1    The Complaint sets forth specific allegations cited against each individual ("who"), their

2    specific false misconduct ("what"), the specific date of the misconduct ("when"), the location where

3    this misconduct took place ("where") and the documentary means that were employed ("how").

4    Each required element is alleged and to claim that such facts are omitted when in fact they are there

5    is without merit.  **Compl., ¶¶130-140.**  The basis for which LBMLT 2006-6 puts before the Court

6    for its interest in the Subject Loan and DOT is the Assignment.  Plaintiffs' allege that the

7    Assignment fails to grant any interest in the Subject Loan to LBMLT 2006-6.   The elements of

8    fraud are: (1) misrepresentation; (2) knowledge of the falsity of the misrepresentation; (3) intent to

9    induce reliance; (4) justifiable reliance; and (5) damages.  *In Re Jogert, Inc.*, 950 F. 2d 1498 (9th Cir.

10   1991) (applying California law); Cal. Civil Code §1572.  Intentional concealment of a material fact

11   is an alternative form of fraud equivalent to direct misrepresentation.  *Stevens v. Superior Court*

12   (1986) 180 Cal. App. 3d 605, 608.

13   In Plaintiffs' claim for Fraud, the Complaint details the misrepresentation made in the NOD,

14   Substitution, Assignment and Notice of Trustee Sale.  **Compl., ¶¶130-140**.  The Complaint sets

15   forth the precise "who, what where and how" of the misrepresentation with knowledge of falsity

16   with the intent to induce reliance, reliance thereon and damages. **Compl., ¶¶38, 42, 45-49, 52-59**;

17   **¶¶132, 134-137** (knowledge of falsity); **¶132, 134-137**  (fraudulent documents were intended to

18   induce Plaintiffs' reliance thereon in order to accomplish the goal of taking the Property under false

19   pretenses); **¶138** (Plaintiffs' justifiably relied on the fraudulent foreclosure documents as they

20   appeared to be genuine land records related to the Subject Loan); and **¶138** (Plaintiffs damages).

21   Moreover, the entity authorizing the misrepresentations, the employee or agent making the

22   representations, the date the misrepresentations were made and where the misrepresentations were

23   made are specifically set forth in the Complaint.  **Compl., ¶¶132, 134-137**.

24   Plaintiffs justifiably relied to their detriment on LBMLT 2006-6's assertions of a beneficial

25   interest in the Subject Loan by, *inter alia*, making payments to a party that has no right to such

26   payments, to their detriment. In *Manderville v. PCG &S Group, Inc*. (2007) 146 Cal. App. 4th 1486,

27   1502, the Court observed that "[a]n action for fraud or deceit, negligence on the part of the

28   plaintiff in failing to discover the falsity of the defendant's statement is no defense when the

1   misrepresentation was intentional."  Moreover, "the reasonableness of the reliance on the false

2   statement is ordinarily a question of fact." *Guido v. Koopman* (1991) 1 Cal.App.4th 837, 843, 2

3   Cal.Rptr.2d 437.  This should not be used against Plaintiff at the motion to dismiss phase and

4   will be developed in discovery after Defendants are ordered to answer.

5       Plaintiffs are prejudiced by the illegal assignments.  First, the payments they have already

6   made, based on Defendants false claims that they are entitled to those payments, are not a set-off to

7   the amounts owed to the true beneficiary - whomever that may be.  Second, as described with

8   particularity in preceding sections, Defendants have filed false documents and have predicated all of

9   their pre-foreclosure activity on a knowingly false instruments.  Third, assuming the illegal

10  foreclosure of the property was allowed to proceed, other parties may still seek to enforce the debt

11  obligation against Plaintiffs.  Fourth, the title to the Property has been clouded, fatally defective and

12  rendered unmarketable, as any REO would-be buyer of the Property will find themselves in legal

13  limbo, unable to know with any certainty whether they can safely buy property or get title insurance

14  or close escrow.  Fifth, Plaintiffs have been paying the wrong party for an undetermined amount of

15  time and overpaid in interest that was over calculated.  Sixth, Plaintiffs are unable to determine

16  whether the monthly mortgage payments were paid to the right party.  Seventh, Plaintiffs have

17  expended significant funds to cover the cost of attorney's fees and related cost to clear the cloud of

18  title to the Property.  Plaintiffs have sufficiently pled each of the elements of fraud and the

19  Motion to Dismiss should be denied as to this claim.

20  **K.  Plaintiffs' Cancellation of Instruments Claim is Sufficiently Pleaded as a Matter of Law**

21      Plaintiffs' causes of action for cancellation of instruments are warranted as a result of the

22  fraudulent and wrongful foreclosure activities of defendants.  Plaintiffs have sufficiently alleged that

23  LBMLT 2006-6 and its agents have collected mortgage payments from them without the authority

24  to do so. **Compl., ¶¶17-20, 24-30, 34-35, 37-38** and **41.**  The Assignment by AIDAN is out of date

25  and invalid and should be cancelled.[9]  There is no supporting credible admissible evidence to show

26

27  [9] The out-of-date Assignment of DOT to LBMLT 2006-6 (without the required intervening indorsement of the original
    Note) is invalid and fraudulent for, *inter alia*, five reasons: (i) the Subject Loan was sold years earlier by AIDAN and is
    a prohibited transaction under the PSA; (ii) despite being paid in full for the selling the Subject Loan AIDAN failed to

28  validly transfer the Subject Loan to the proper party resulting in the chain of title being broken at that point in time –

                                                                        (continued . . . )

1  that the underlying original Note was indorsed and transferred to LBMLT 2006-6 and Defendants

2  make no reference to such foundational fact in the MTD.

3      The Substitution is ineffective as the issuer was not acting on behalf of the true beneficiary at

4  the time of issuance.  The NOD is similarly defective and void.  Only a "true owner" or "beneficial

5  holder" of a Deed of Trust can bring to completion a non-judicial foreclosure under California law.

6  *Barrionuevo, et al.v Chase Bank, N.A., et al*. No.12-CV-0572 EMC at p.10 (N.D. Cal. August 6,

7  2012). The beneficiary ultimately is the party that initiates non-judicial foreclosure, since the trustee

8  who records a Notice of Default pursuant to Cal. Civ. Code Section 2924 and does so as the

9  authorized agent of the beneficiary. Cal. Civ. Code Section 2924(a)(1); *Barrionuevo, et al. v. Chase*

10  *Bank, N.A., et al., supra*, at 10.  LBMLT 2006-6 is an invalid beneficiary.

11      As LBMLT 2006-6 had no beneficial or other interest in the Subject Loan when it authorized

12  the issuance of the NOD, the NOD is void and the foreclosure documents that flow from such

13  defective instruments are likewise void (i.e. Notice of Trustee Sale). *See Miller v. Cote* (1982) 127

14  Cal. App. 3d 888, 894 (a trustee sale based on a statutorily deficient Notice of Default is invalid).

15      Plaintiffs have sufficiently pled each of the elements of Cancellation of Instruments and

16  the Motion to Dismiss should be denied as to this claim.

17  **L.  Plaintiffs' Quasi Contract Claim is Sufficiently Pleaded as a Matter of Law**

18      A claim for quasi-contract is synonymous with one for unjust enrichment. *FDIC v. Dintino,* 167

19  Cal. App. 4th 333, 346 (2008); *Lectrodyer v. SeoulBank* (2000) 77 Cal. App. 4th 723,726.  Unjust

20  enrichment requires the receipt of a benefit and the unjust retention of that benefit at the expense of

21  another. *Peterson v.Cellco P'ship,* 164 Cal. App. 4th 1583, 1593 (2008).  If Plaintiff prevails with

22  the substantive claims, this would necessarily mean that payments were made to the wrong party

23  and, *inter alia,* the recovery of those payments would be included in damages.  **Compl., ¶¶148-151.**

24

25

26      ( . . . continued)

27  with the new beneficiary and successor lender in the DOT and Note unknown; (iii) *only the Depositor, and no other,* may contribute and assign loans to LBMLT 2006-6 before its "Closing Date"; (iv) the trust laws of the State of New York which governs LBMLT 2006-6 renders void any transfer not in compliance with the governing documents; and (v)

28  AIDAN was no longer legally in existence at the time of its execution.

1    In *Naranjo v. SBMC Mortgage, JP Morgan, US Bank et al.,* the plaintiff sufficiently alleged

2  facts that put Defendants' legal rights that derive from the PSA in question, as Plaintiffs' allegations

3  do here and the court found that "plaintiff adequately alleges facts that show Defendants were

4  unjustly enriched in collecting payments based on those presumed rights." *Naranjo,* (U.S. Dist. Ct.,

5  S.D. Cal. Case No. 11-cv-2229-L, July 24, 2012).  Also, as in *Johnson v. HSBC et al.*, (U.S. Dist.

6  Ct., S.D. Cal. Case No. 3:11-cv-2091-JM-WVG), in the Complaint, Plaintiffs allege there is no valid

7  agreement governing the transaction between Plaintiffs and LBMLT 2006-6.  Thus, if Plaintiffs

8  succeed in showing that LBMLT 2006-6. or its agents were not authorized to collect payments, they

9  may be able to recover based on quasi-contract.  To the extent Defendants argues that its Motion to

10  Dismiss should be granted on these grounds, Plaintiff requests that the Motion to Dismiss should be

11  denied on this basis.

12    **M. Plaintiff's Accounting Claim Should Not Be Dismissed**

13  "A cause of action for an accounting requires a showing that a relationship exists between the

14  plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that

15  can only be ascertained by an accounting." *Teselle v. McLoughlin*, 173 Cal.App.4th 156 (2009).  See

16  also 5 Witkin, Cal. Proc. 4th (1997) Pleading, section 775-776, p. 233.  The Complaint sufficiently

17  alleges the elements to an accounting and to the extent Defendants argues that its Motion to Dismiss

18  should be granted on these grounds, Plaintiff requests that the Motion to Dismiss should be denied

19  on this basis.

20    **<u>CONCLUSION</u>**

21    The above authorities provide ample support for Plaintiffs' well pleaded allegations in the

22  Complaint that LBMLT 2006-6 has no enforceable interest in Plaintiffs' Loan and Plaintiffs

23  respectfully submit that the motion to dismiss should be denied.  In the alternative, should the Court

24  grant any part of the Motion to Dismiss, Plaintiffs respectfully request the Court grant leave to

25  amend.                                    Respectfully submitted,

26                                    BUSINESS AFFAIRS CONSULTANTS, INC.

27  Dated: August 19, 2013          By*:____/s/ Christopher P. Epsha_____*
                                    Christopher P. Epsha

28                                    Attorney for Plaintiff/Debtor